DECISION
This matter is before the Court for decision after a jury-waived trial conducted on January 8, 1999.
The Plaintiff, James I. Thompson and Defendants, Doreen McCann and Midwest Electric Co., entered into a purchase and sale agreement on April 21, 1998. By the terms of that agreement, Defendants agreed to convey to Plaintiff a commercial condominium located within the Bay View Condominium complex in Jamestown. Defendants also agreed to take a]] necessary steps to effectuate the transfer of the liquor license associated with the premises. The agreement obligated the parties to close the transaction on May 27, 1998 at 11 a.m. at the Jamestown Town Hall. Plaintiff testifies that at that time be was ready, willing and able to close on the unit. In the meantime, the town had not acted upon the request to transfer the attendant liquor license. Although the parties expected that the Town Council would consider the transfer at its' April 27th meeting, the matter was postponed until May 11. On that date, the Town Council voted to advertise the proposed transfer for hearing at its June 8th meeting. In the interim, Plaintiff had requested that the Town Council also consider a change of zone for the premises from commercial to single-family residential. See Exhibit "B."
The grant of such an amendment was in no way a condition of the sale. Plaintiff testified that he was prepared to continue to operate a restaurant on the premises should his request be declined. Plaintiff also testified that Defendant Doreen McCann was "upset" when she learned of his zone change, something she and her husband had previously asked the Town Council, without success, to consider. Plaintiff explained that be understood the risk but, nonetheless, wished to make the effort.
On May 17, Plaintiff was granted access to the condominium for the purpose of taking measurements. Defendant Doreen McCann had previously refused to giver Plaintiff a key but on this occasion she permitted Plaintiff to inspect the condominium in the company of her son.
On the subsequent Saturday evening, Defendant, Doreen McCann, visited the Plaintiff's nearby liquor store in order to purchase cigarettes. There was no intimation that the closing would not go forward as planned. Plaintiff does recall being told by Defendant, Doreen McCann, that she had fired her lawyer and would need a delay to replace him. According to the Plaintiff, no discussion regarding an extension again ensued.
On May 26, Defendant. Doreen McCann's realtor, Paula McCann had prepared an addendum to the sales agreement extending the closing date to June 9th, the day after the transfer of the liquor license would be considered by the town council. See
Exhibit "2." According to Paula McCann, Defendant Doreen McCann said that an extension of the agreement to accommodate the June 8th liquor license hearing was "no problem." Although Paula McCann faxed the extension to Doreen McCann on May 26, Doreen did not return it. explaining that she wanted her attorney to review and revise the document. Interestingly, Paula McCann testified that Doreen was "very upset" about the Plaintiff's application for a zone change. Doreen commented to Paula, "if anyone should live there, it should be [me]." Nonetheless, in Paula's mind, everything bad been going smoothly towards consummating the conveyance. There was no sign of trouble until Doreen presented Paula with a copy of the June 1st letter to Plaintiff apprising him that be breached the agreement.
Defendant, Doreen McCann's testimony concerning the chain of events is not at great variance with that any other witness. What is significant in her testimony is her description of a return visit to the restaurant when she was looking at the view and decided that she did not want to sell the restaurant. She testified that she called her attorney to find out how she "could get out of this." The June 1st letter followed.
The Plaintiff argues: 1) that the Defendant did not act in good faith; 2) that the contract is ambiguous with respect to the transfer clause versus the "time of essence clause; 3) that the Defendant waived the right to insist on a May 27th closing; 4) that the Defendant failed to tender performance. The Defendant claims that there was no breach of the duty to act in good faith; that no ambiguity exists in the contract; that the waiver (estoppel) argument is not applicable; and, that the purchase and sale agreement is "dead" because of the condition precedent of the liquor license transfer was not fulfilled.
The three parties to the April 21, 1998 purchase and sale agreement are Defendant, Doreen McCann (Seller), Defendant, Midwest Electric Corp., owner of the liquor license, and James I. Thompson ("Buyer"). Paragraph five of the purchase and sale agreement specifies, in pertinent part, that Mr. Thompson is paying $204,OOO for the unit and "all furniture, fixtures, liquor license . . ." In the recitals, it is stated that "seller desires to sell the premises and cause Midwest to transfer the attendant license to Buyer."
Paragraph two of the agreement obligates the Seller to "take all steps necessary to cause Midwest to apply to the Town of Jamestown for a transfer of the . . . liquor license." The conditions precedent to the Buyer's obligation to close were exclusively for the Seller to peform.
Clearly, the Plaintiff was completely powerless to effectuate the license transfer. He was at the mercy of Defendant to get the transfer on the Town Council's agenda, and he was at the mercy of the council as to when, in conformance with legal regulations, it would hear the matter. It was not Plaintiff's fault that the closing could not occur on the contract date of May 27th. The Council scheduled the hearing for June 8th, an event beyond the control of all parties. It was the Defendant's obligation to pursue the transfer application at the June 8th hearing. Instead of doing so, she repudiated the contact, the Court believes, on a whim and without any legal justification. She testified with reference to May 30 as follows: ". . . at that particular time I was up at the restaurant by myself and looking out at the view and I decided I didn't want to sell it." See TR at 1; 11.4-6. With reference to her obligations under the contract and a call to her attorney regarding same, she stated: "I asked him if there was any way I could get out of this because I didn't want to sell it anymore." TR at 1; 11.13-14.
After that discussion, she prepared the June 1st letter to the Plaintiff advising him that as a result of his failure to close as required "the agreement [sic] is null and void." In the meantime, on May 28th, she had asked Plaintiff, through agent McCann, to agree to purchase $4,000 worth of liquor inventory. Would she have Mr. Thompson purchase the inventory without the lawful right to keep it on the premises? Moreover. Mr. Thompson on June 1st, was ready, willing and able to close immediately, without awaiting the outcome of the transfer hearing.
Defendant, Doreen McCann, very simply, "changed her mind" on May 30th. See TR 1A of Doreen McCann; 11.6-11. Perhaps, after enjoying the view that day, she could not abide the thought that Mr. Thompson might be able to reside there, a pleasure which should be exclusively reserved to her and her husband but denied them. See TR of Paula McCann at 1; 11.3-6. It is not for the Court to speculate. Whether a change of heart or a change of mind, neither was Defendant's prerogative. Mr. Thompson, at all times has been ready, willing and able to close. He was, and remains, totally compliant with his obligations as set forth in the purchase and sale agreement. The Defendant has breached the contract by refusing to convey the premises to Plaintiff. Her assertion that Mr. Thompson breached the agreement is borderline scurrilous.
The credible evidence clearly and convincingly entitles the Plaintiff to the relief he seeks. Therefore, the Court enters judgment for Plaintiff, James J. Thompson and orders performance of the agreement as soon as it is practicable.